**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| JENNA CAMPAU, PARENT AND NEXT FRIEND OF MINOR CHILD A.C.,<br>    Plaintiff,<br><br>v.<br><br>SPECTRUM HEALTH HOSPITALS D/B/A HELEN DEVOS CHILDREN'S HOSPITAL,<br><br>BHSH SYSTEM,<br>    Defendants, | CASE NO.<br><br><br><br><br><br><br><br><br>MAY 13, 2022 |

## COMPLAINT

1.  The Plaintiff brings this action on behalf of her minor daughter who is need of a kidney transplant but is being excluded from the necessary medical evaluations and processes on account of the defendant medical providers' vaccination policies. Those policies effectively require the Plaintiff to either violate her religious beliefs or deny her daughter life-saving medical care.

2.  The Plaintiff is the mother of A.C. (formerly known as A.M.), a minor child. A.C. is seventeen years old. She brings this action as the parent and next friend of A.C. The Plaintiff and A.C. reside in Fennville, Allegan County, Michigan.

3.  Defendant Spectrum Health Hospitals d/b/a Helen DeVos Children's Hospital is a domestic non-profit corporation, organized under the laws of Michigan, with its headquarters and principal place of business in Grand Rapids, Kent County, Michigan. This defendant is a licensed healthcare provider which owns and operates several hospitals and other medical facilities, including but not limited to the Helen DeVos Children's Hospital in Grand Rapids, Kent County, Michigan.

4. Defendant BHSH System is a domestic non-profit corporation, organized under the laws of Michigan, with its headquarters and principal place of business in Grand Rapids, Kent County, Michigan. This defendant is a system of hospitals, medical facilities and other medical providers, which owns and operates said hospitals, medical facilities and other medical providers, including the Helen DeVos Children's Hospital in Grand Rapids, Kent County, Michigan.

## JURISDICTION AND VENUE

5. The Court has jurisdiction over this action pursuant to 28 U.S.C §§ 1331, 1343, 1367 and 2201 as well as 42 U.S.C. § 2000a. This action concerns a federal question and also related state claims for which this Court has supplemental jurisdiction

6. Venue is appropriate under 28 U.S.C. § 1391 because all parties are domiciled within the district and all of the factual occurrences giving rise to the causes of action occurred within the district.

## FACTUAL ALLEGATIONS

7. A.C. is a seventeen year-old female. She turns eighteen in July. She is the daughter of the Plaintiff, who adopted her from Ukraine in 2021.

8. A.C. is diagnosed with stage three chronic kidney disease and end-stage renal disease among other medical issues. Following the surgical removal of one kidney when she was younger, A.M. now has only a single kidney and it is not functioning well.

9. A.C. is a patient at the Helen DeVos Children's Hospital (hereinafter "Hospital") in Grand Rapids, Michigan, where she receives dialysis which is necessary because of her failing kidney.

10. The Hospital is a medical facility that provides health services to the public. In addition, the Hospital contains dining establishments, including a café and coffee kiosk, that serve food and drinks to the public.

11. A.C. began seeing various specialists at the Hospital in June 2021.

12. A.C.'s physicians have stated that she will need a kidney transplant.

13. A series of medical evaluations is required for a patient to be approved to be eligible for a transplant and placed on the transplant waiting list. This is the "transplant process."

14. The Plaintiff has attempted to initiate the transplant process for A.C. at the Hospital.

15. The United Network for Organ Sharing (hereinafter "UNOS") is is the mission-driven non-profit serving as the nation's transplant system under contract with the federal government. It manages the national transplant waiting list and matches donors to recipients.

16. The Hospital and defendants are members of UNOS and/or rely on UNOS for transplant organs for their patients.

17. UNOS does not as a system, have vaccine requirements for prospective organ recipients. UNOS' Transplant Living website specifically states: "Each transplant hospital makes its own decisions about listing and transplanting candidates according to the hospital's best clinical judgment, including whether or not any specific vaccination is part of their eligibility criteria." https://transplantliving.org/covid/#PatientFAQ (Last accessed 4/22/2022).

18. The defendants have enacted their own policies to mandate vaccines for organ transplant patients.

19. In order to even start the transplant process, which includes preliminary evaluations, A.M. would be required, under Hospital policy, to receive several vaccines, including but not limited to those for COVID-19, influenza and H.P.V. (human papillomavirus), which it considers pre-transplant requirements.

20. The Plaintiff and her husband object to the requested vaccinations on religious grounds. Due to their religious beliefs, they are opposed to any vaccine or other medical product that is produced or researched using aborted fetal cells and also genetic modifications or therapies that involve combing human and cells or DNA. Additionally, they oppose, under the religious laws established in the Book of Leviticus, vaccines that contain products from various animals it lists as "unclean."

21. The three COVID-19 vaccines available in the United States are produced using aborted fetal cells.

22. The Plaintiff has made her objections regarding the vaccines known to the Hospital and requested reasonable accommodations; that the transplant process commence without A.C. receiving the vaccines in question.

23. The requested vaccines are not medically necessary for the evaluation process to commence or for a kidney to be transplanted.

24. The Plaintiff informed the Hospital, through resident physician Sammy Dia, M.D., that she was opposed to vaccines on religious grounds and because of potential side effects, on or about August 20, 2021.

25. On or about September 17, 2021, Jason Thomas, M.D., a nephrologist at the Hospital, noted that A.C. would likely receive a referral for a kidney transplant in the following months. On or about October 15, 2021. Dr. Thomas discussed the requirements and recommendations for the transplant process, including required vaccines and medications. The Plaintiff again voiced her objections to the vaccines.

26. Thereafter, on or about October 30, 2021, the Plaintiff requested the Hospital's written protocols concerning transplant vaccine and medical requirements. She and medical personnel continued to discuss the requirements and transplant process.

27. On or about January 18, 2022, during a care conference, Dr. Thomas informed the Plaintiff and her family that A.M. was medically ready to begin the pre-transplant process.

28. On or about February 25, 2022, Hospital Social Worker Phoebe Bell told the Plaintiff that there may be exceptions to the Hospital's pre-transplant vaccine requirements that would be considered on an individual basis.

29. On or about March 25, 2022, Rosemary Olivo, M.D., a physician with the Hospital, acknowledged that, in response to the Plaintiff's questions, that if patients refused to receive vaccines in the transplant process, that the transplant team would meet and discuss the matter with the Hospital's ethics department.

30. Although the Plaintiff has made repeated requests for exceptions to the pre-transplant vaccine requirements, as of the filing of this Complaint, the Hospital has not considered them.

31. On or about April 14, 2022, the Plaintiff's counsel sent a letter to the defendants' general counsel requesting exemptions to the pre-transplant vaccine requirements and further requested a response by April 21, 2022. The defendants did not respond. A copy of that letter is annexed hereto as Exhibit A.

32. On or about April 28, 2022, the Hospital contacted the Plaintiff to schedule a psychological evaluation, which is part of the transplant process, for A.C. The Plaintiff agreed to schedule the evaluation.

33. On or about April 28, 2022, the Hospital contacted the Plaintiff to schedule a Transplant Consent Education session. The Plaintiff agreed and attended the session on May 9, 2022. At that session, the Hospital provided to the Plaintiff a copy of a pamphlet titled "The Pediatric Kidney Transplant Process."

34. In a section of the pamphlet, under the heading, "Reasons why your child may not qualify for a transplant (Exclusion criteria)," it lists "refusal of childhood vaccinations as recommended by infectious diseases."

35. The pamphlet does not specify the COVID-19, influenza and HPV vaccines as required. Additionally, they are not reasonably considered childhood vaccines. The State of Michigan, for instance, does not require any of the aforementioned vaccines for school entry.

36. If A.C. does not receive a kidney transplant or if the transplant process is delayed, she will suffer adverse health consequences.

**COUNT ONE – VIOLATION OF TITLE II OF THE CIVIL RIGHTS ACT OF 1964.**

37. Paragraphs 1-36 are incorporated by reference as though set forth in full.

38. Title II of the Civil Rights Act, codified at 42 U.S.C. § 2000a, provides in relevant part that "all persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination on the ground of race, color, religion, or national origin." 42 U.S.C. § 2000a(a).

39. The Hospital is a place of public accommodation. It provides medical services as well as dining to the public.

40. The Hospital's pre-transplant vaccine requirements, which conflict with the Plaintiff's religious beliefs, constitute a denial on the ground of the Plaintiff's religion of the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of the Hospital.

**COUNT TWO – VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT.**

37. Paragraphs 1-36 are incorporated by reference as though set forth in full.

38. The Elliott-Larsen Civil Rights Act, codified at M.C.L. § 37.2302 provides that a person shall not "deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of place of public accommodation or public service because of religion, race, color, national origin, age, sex, or marital status." M.C.L. § 37.2302(a).

39. The Hospital is a place of public accommodation and/or a place of public service.

40. The Hospital's pre-transplant vaccine requirements conflict with the Plaintiff's religious beliefs and therefore constitute a denial of the full and equal

7

enjoyment of Hospital's goods, services, facilities, privileges, advantages, or accommodations of the Hospital because of the Plaintiff's religion.

## Prayer for Relief

WHEREFORE, the Plaintiff respectfully requests that the Court grant the following relief:

A. A declaratory judgment holding that the Hospital's refusal to provide A.C. with an exemption from the transplant vaccination requirements as an accommodation for her religious beliefs violates Title II of the Civil Rights Act and is thereby unlawful;

B. A declaratory judgment holding the Hospital's refusal to provide A.C. with an exemption from the transplant vaccination requirements as an accommodation for religious beliefs violates Michigan's Elliott-Larsen Civil Rights Act and is thereby unlawful;

C. A permanent injunction enjoining the defendants and their agents from requiring A.C. to receive the COVID-19, influenza and H.P.V. vaccines as conditions for being evaluated for a potential kidney transplant, being listed for said transplant and receiving any such transplant.

D. Monetary damages.

E. Costs and attorneys' fees.

F. Such other relief as law, justice and equity may require.

## JURY DEMAND

The Plaintiff demands trial by jury of all issues so triable in accordance with Rule 38 of the Federal Rules of Civil Procedure.

THE PLAINTIFF

By: **/s/ Norman A. Pattis**
Norman A. Pattis
Pattis & Smith, LLC
383 Orange St., First Floor
New Haven, CT 06511
Tel: (203) 393-3017
Fax: (203) 393-9745
Npattis@pattisandsmith.com


**/s/ Christopher DeMatteo**
Christopher DeMatteo
Pattis & Smith, LLC
383 Orange St., First Floor
New Haven, CT 06511
Tel: (203) 393-3017
Fax: (203) 393-9745
cdematteo@pattisandsmith.com


**/s/ James A. Thomas**
James A. Thomas
Law Offices of James A.
Thomas, P.A.
1925 Breton Rd. SE Suite 250
Grand Rapids, Michigan 49506
Tel: (616) 747-1188
jimmy@jimmythomaslaw.com

Dated: May 13, 2022